IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),

    Plaintiff,

v.

ALEXANDER KLEIN; BETTY KLEIN; DAVID KLEIN; JACOB KLEIN; JOSEPH KLEIN; ETHEL MOSKOVITS; RIVKIE KATZ; and YERUCHUM WINER,

    Defendants.

Civil Action No.:

ORIGINAL FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ MAY 16 2011 ★
BROOKLYN OFFICE

CV 11-2363

BLOCK, J.

CARTER, M.J.

## COMPLAINT FOR DECLARATORY JUDGMENT AND FRAUD

Plaintiff The John Hancock Life Insurance Company (U.S.A.) ("Plaintiff" or "John Hancock"), for its Complaint against Defendants Alexander Klein, Betty Klein, David Klein, Jacob Klein, Joseph Klein, Ethel Moskovits, Rivkie Katz, and Yeruchum Winer alleges, upon information and belief, as follows:

### NATURE OF ACTION

1.    This is an action for declaratory judgment and fraud to declare ten life insurance policies issued by John Hancock, with a total face value of $40 million, terminated and unenforceable for failure to pay premiums and for fraud. John Hancock also seeks to recover damages resulting from: (i) Alexander and Betty Klein's scheme to provide John Hancock with twenty checks totaling $490,766.50 that they knew were not backed by any funds and were ultimately dishonored by their bank; and (ii) Defendants' (except Betty Klein) fraudulent representations to John Hancock both directly and through counsel about the purpose of the life insurance policies.

1

## PARTIES

2. John Hancock is a Michigan corporation with its principal place of business in Massachusetts. It is a financial services company whose business activities include providing life insurance to consumers.

3. On January 1, 2008, John Hancock issued life insurance policy no. 93723336 insuring the life of Alexander Klein for $4 million. On February 22, 2008, John Hancock issued life insurance policy no. 93967370 insuring the life of Alexander Klein for $4 million. The stated owner of these two polices is David Klein, who maintains a primary residence and/or principal place of business at 1751 46th Street, Brooklyn, New York 11219. Attached as Exhibits 1 and 2 are copies of policy nos. 93723336 and 93967370, respectively.

4. On January 1, 2008, John Hancock issued life insurance policy no. 93793149 insuring the life of Alexander Klein for $4 million. On February 22, 2008, John Hancock issued life insurance policy no. 93967487 insuring the life of Alexander Klein for $4 million. The stated owner of these two policies is Jacob Klein, who maintains a primary residence and/or principal place of business at 1244 50th Street, Brooklyn, New York 11219. Attached as Exhibits 3 and 4 are copies of policy nos. 93793149 and 93967487, respectively.

5. On January 1, 2008, John Hancock issued life insurance policy no. 93793156 insuring the life of Alexander Klein for $4 million. On February 22, 2008, John Hancock issued life insurance policy no. 93967495 insuring the life of Alexander Klein for $4 million. The stated owner of these two policies is Joseph Klein, who maintains a primary residence and/or principal place of business at 1723 54th Street, Brooklyn, New York 11219. Attached as Exhibits 5 and 6 are copies of policy nos. 93793156 and 93967495, respectively.

6. On January 1, 2008, John Hancock issued life insurance policy no. 93793131 insuring the life of Alexander Klein for $4 million. On February 22, 2008, John Hancock issued

life insurance policy no. 93967479 insuring the life of Alexander Klein for $4 million. The stated owner of these two policies is Ethel Moskovits, who maintains a primary residence and/or principal place of business at 1445 52nd Street, Brooklyn, New York 11219. Attached as Exhibits 7 and 8 are copies of policy nos. 93793131 and 93967479, respectively.

7. On January 1, 2008, John Hancock issued life insurance policy no. 93793164 insuring the life of Alexander Klein for $4 million. On February 22, 2008, John Hancock issued life insurance policy no. 93967503 insuring the life of Alexander Klein for $4 million. The stated owner of these two policies is Rivkie Katz, who maintains a primary residence and/or principal place of business at 1445 52nd Street, Brooklyn, New York 11219. Attached as Exhibits 9 and 10 are copies of policy nos. 93793164 and 93967503, respectively.

8. Alexander Klein, the insured under all of the above referenced policies, and Betty Klein maintain a primary residence and/or principal place of business at 1445 52nd Street, Brooklyn, New York 11219. Alexander Klein and Betty Klein are husband and wife.

9. Each of the above referenced policies bears what purports to be the signature of Yeruchum Winer as the agent procuring the policy. Winer is an independent life insurance broker who solicits sales of life insurance policies to consumers from life insurance companies such as John Hancock. Winer maintains a primary residence and/or principal place of business at 1781 Northeast 162nd Street, Miami, Florida 33162. Upon information and belief, Winer is a citizen of Florida.

10. The applications for the above referenced policies (collectively, the "Policies") were purportedly executed by the insured, Alexander Klein; by David Klein, Joseph Klein, Jacob Klein, Ethel Moskovits, and Rivkie Katz (the "Policyowners"); and by Yeruchum Winer in Miami, Florida. The Policies were purportedly received by the Policyowners in Miami, Florida.

3

11. Each of the Policies contains a provision that states: "THIS POLICY WILL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAWS OF FLORIDA."

## JURISDICTION AND VENUE

12. This case seeks, *inter alia*, a declaratory judgment pursuant to 28 U.S.C. § 2201 to adjudicate the rights and legal relations of the parties hereto and damages.

13. This Court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of diverse states.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

15. John Hancock is, and during all relevant times has been, engaged in the business of selling life insurance to consumers.

16. On or about December 10, 2007, Alexander Klein, the Policyowners, and Yeruchum Winer prepared applications for life insurance in Miami, Florida (the "Life Insurance Applications"). The Life Insurance Applications sought life insurance on the life of Alexander Klein.

17. The Life Insurance Applications bear what purport to be the signatures of Alexander Klein as the insured under the Policies, of the Policyowners as the owners of the Policies, and of Yeruchum Winer as the agent procuring the Policies.

18. In the Life Insurance Applications, Alexander Klein, the Policyowners, and Yeruchum Winer represented to John Hancock that no one other than the owner of the Policies would have "any right, title or other legal or beneficial interest in any policy" issued by John Hancock and that the cost of the Policies (*i.e.*, the premiums) would be funded from income and liquid assets.

19. Specifically, the Life Insurance Applications include the following answers to questions relating to the ownership and funding of the Policies:

"5. Is there, or will there be, an understanding or agreement providing for a party, other than the Owner designated in question 3. a), to obtain any right, title or other legal or beneficial interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?" In answer, the "**No**" box is checked.

"6. a) What is the source of the funding for the policy(ies) currently applied for?" "**Income/Liquid Assets**"

"6. b) Will the Owner, now or in the future, be paying premiums funded by an individual and/or an entity other than the Proposed Life Insured(s), or the Proposed Life Insured's employer?" In answer, the "**No**" box is checked.

20. The Life Insurance Applications also include the following answer to a question relating to the purpose of the Policies:

"13. a) What is the purpose of this insurance? (e.g. estate conservation, buy-sell, keyperson)" "**Estate Conservation**"

21. The Life Insurance Applications provide that the owners and proposed insured (*i.e.*, Alexander Klein) acknowledge and agree that the statements and answers given in the applications are "complete and true to the best of my/our knowledge."

22. In reliance on the statements and representations made in the Life Insurance Applications, between January 1, 2008 and February 22, 2008, John Hancock issued and delivered the Policies with a total face value of $40 million.

23. At or about the time the Policies were delivered, John Hancock received first-year premium payments for the Policies for a total amount of $1,483,397.

24. In connection with the Policies, John Hancock has incurred commission expenses and other expenses in excess of $1.75 million.

25. By August 2008, certain facts had come to John Hancock's attention that gave it reason to believe that some of the representations made by the insured, the Policyowners, and Yeruchum Winer in connection with the Policies were false or misleading and, on the basis of this information, John Hancock: (i) disputed the validity of the policies; (ii) stated that it intended to terminate the policies; (iii) offered the Policyowners a formal settlement; and (iv) requested that the Policyowners respond to the letters. John Hancock also instructed the Policyowners to cease payment of all premiums.

26. Although the Policyowners never formally responded to John Hancock's August 2008 letters, between August 2008 and October 2010, counsel for Defendants provided John Hancock with documents and information regarding the suspect representations in the Life Insurance Applications.

27. Counsel for Defendants also represented to John Hancock that the representations in the Life Insurance Applications regarding Alexander Klein's assets and net worth and the source of funding for the Polices were truthful and accurate when, in fact, they were not. John Hancock reasonably relied on these misrepresentations in deciding not to bring suit to contest the validity of the Policies at that time. Thus, counsel's misrepresentations caused John Hancock not to contest the validity of the Policies during the two-year contestability period.

28. By October 2010, John Hancock had concluded its investigation and determined that it was willing to maintain the Policies. On November 4, 2010, John Hancock sent a letter to counsel for Defendants agreeing to be bound by the terms of the Policies "upon the payment of

the premiums that would have been necessary to maintain the polices in-force during the period from August 2008 to the present date." A copy of this letter is attached as Exhibit 11.

29. Throughout the investigation period (from August 2008 through October 2010), John Hancock made no efforts to contest the Policies and did not seek any judicial declaration that the Policies were void or voidable.

30. On November 24, 2010, and on numerous occasions thereafter, John Hancock provided counsel for Defendants the amounts necessary to bring the premiums due under the Policies current. Plaintiff gave the Policyowners a grace period of sixty days, until January 24, 2011, to submit the premium payments owed.

31. On December 2, 2010, Paul Gallagher, John Hancock's Vice President and Counsel, received a voice mail and email message from an attorney who stated that he was not affiliated with counsel for Defendants and that in 2008 his client – an unnamed individual or institution – paid a considerable portion of the premiums for life insurance policy no. 93967503.

32. On January 17, 2011, Alexander Klein submitted, through new counsel, a letter to John Hancock seeking clarification of the Policies' status and of the amount owed for back payment of premiums. John Hancock responded by letter dated February 11, 2011, reiterating its demand for payment of back premiums and extending the payment period, which had expired, to February 22, 2011. John Hancock clearly stated in its letter that it would deem the Policies lapsed if payment were not received by that date.

33. On February 16, 2011, counsel for Alexander Klein demanded statutory authority for the suspension of the Policies and support for John Hancock's position that back premiums were due and owing. At no point did Alexander Klein or the Policyowners dispute that they owed premiums from November 2010 onward.

34. In a good faith effort to settle the dispute, John Hancock entered into an understanding with counsel for Alexander Klein whereby: (i) John Hancock and the Policyowners would agree to disagree on whether the Policyowners were obligated to make premium payments for the period of August 2008 through October 2010 and would agree to litigate that issue; and (ii) the Policyowners would make payment to John Hancock for the undisputed premiums that were owed for the period of November 2010 forward.

35. In connection with this understanding, John Hancock gave counsel for Alexander Klein and the Policyowners a firm date of March 31, 2011, for payment of the premiums owed. If payment on the undisputed premiums from November 2010 forward was not received by March 31, 2011, the Policies would be declared terminated and unenforceable.

36. Consistent with this understanding, at 10:05 p.m. on March 31, 2011, the Policyowners hand-delivered to counsel for John Hancock twenty checks signed by Betty Klein for a total amount of $490,766.50 (approximately the amount owed by the Policyowners for the period of November 2010 forward). These checks were drawn on an account at HSBC Bank. A copy of these checks is attached hereto as Ex. 12.

37. On April 5, 2011, John Hancock deposited the checks issued by Betty Klein. The checks were not honored by HSBC Bank and were ultimately returned for "Stop Payment."

38. On April 18, 2011, counsel for John Hancock received a letter (via email) from Alexander Klein, in which Alexander Klein admits that he and his wife, Betty Klein, provided checks to John Hancock that were not backed by sufficient funds. In his April 18, 2011, letter, Alexander Klein claims: "As you were aware that said checks were issued and delivered with the understanding that the funds would be made available upon the satisfactory completion of the negotiations with one Isaac Genuth, with whom you met on Sunday, April 3rd, 2011, and which

negotiations were terminated without agreement, demand is hereby made upon you to forthwith return said checks to me."

39. Prior to April 18, 2011, counsel for John Hancock had never communicated or spoken with Alexander Klein and had no understanding with Alexander Klein or anyone acting on his behalf about the checks that were unconditionally submitted to John Hancock on March 31, 2011.

## FIRST CLAIM FOR RELIEF
**Declaratory Judgment Against the Policyowners**

40. John Hancock realleges the allegations contained in all the prior paragraphs as though fully set forth herein.

41. There exists an actual controversy between John Hancock and the Policyowners that lies within the jurisdiction of this Court pursuant to 28 U.S.C. § 2201.

42. Each of the Policies provides (§ 10) that "[s]ubject to the No-Lapse Guarantee feature of the policy, the policy and any Supplementary Benefit riders will go into default if, at the beginning of any Policy Month, the Net Cash Surrender Value is less than or equal to zero after we take the Monthly Deduction that is due for that month."

43. Each of the Policies also provides (§ 11) that: "This policy terminates on the earliest of the following events: (a) the end of the grace period for which we have not received the amount necessary to bring the policy out of default; (b) surrender of the policy for its Net Cash Surrender Value; or (c) the death of the Life Insured."

44. As of April 1, 2011, the Net Cash Surrender Value of each Policy was less than or equal to zero.

45. There is no dispute that, at a minimum, John Hancock is entitled to receive premium payments for the time period of November 2010 onward. John Hancock is also entitled to receive back-premium payments for 2009 through October 2010.

46. John Hancock has not received any premium payments on the Policies since February 2008. The checks received by John Hancock on March 31, 2011, were not honored by HSBC Bank.

47. Accordingly, John Hancock is entitled to a declaratory judgment that the Policies are terminated and unenforceable.

### SECOND CLAIM FOR RELIEF
**Fraud**
**(Against Defendants Alexander Klein and Betty Klein)**

48. John Hancock realleges the allegations contained in all prior paragraphs as though fully set forth herein.

49. On March 31, 2011, Alexander and Betty Klein caused to be delivered to John Hancock twenty checks numbered 152-160, 162, and 164-173 in the total amount of $490,766.50 drawn on HSBC Bank. The delivery of the twenty checks constituted Betty Klein's representation that she had on deposit with HSBC Bank a sum equal to the amount of each check. In reality, the checks were worthless.

50. On information and belief, Alexander Klein and Betty Klein were aware of the falsity of their representations at all relevant times, including when Betty Klein wrote and signed the checks, when the checks were hand-delivered to John Hancock's counsel on March 31, 2011, and when John Hancock attempted to deposit the checks into its own account.

51. Alexander and Betty Klein materially misrepresented the funds on deposit at HSBC Bank for the purpose of fraudulently inducing Plaintiff to continue to administer the Policies rather than terminate them for non-payment.

52. John Hancock reasonably relied on Alexander and Betty Klein's misrepresentations as to the validity of the checks when it attempted to deposit the checks into its own account.

53. As a result of Defendants' fraudulent conduct, Plaintiff has suffered injury, in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### Fraud
### (Against All Defendants Except Betty Klein)

54. John Hancock realleges the allegations contained in all prior paragraphs as though fully set forth herein.

55. The Life Insurance Applications contained numerous false representations, each of which was material to John Hancock's decision to issue the Policies. These material misrepresentations were part of a scheme to defraud John Hancock that, on information and belief, was conceived and orchestrated by Defendants (except Betty Klein) and others.

56. Specifically, Defendants (except Betty Klein) knowingly and intentionally defrauded John Hancock into issuing life insurance policies with a total death benefit of $40 million by misrepresenting the purpose of the Policies and the source of the premium payments. Defendants (except Betty Klein) also falsely represented to John Hancock that there was no, and would be no, understanding or agreement providing for a party other than the Owner "to obtain any right, title or other legal or beneficial interest in any policy issued in the life of the [insured] as a result of this application."

57. At all relevant times, including when the Life Insurance Applications were executed and submitted to John Hancock, when the initial premium payment was submitted, and when the Policies were delivered, Defendants (except Betty Klein) were aware of the falsity of those representations.

58. Moreover, in an effort to prevent John Hancock from contesting the validity of the Policies within the two-year contestability period, Defendants (except Betty Klein and Yeruchum Winer), through counsel, continued to make misrepresentations to John Hancock about the validity of the Policies, the veracity of the representations in the Life Insurance Applications, and the purpose of the Policies. As a result of these continuing misrepresentations, John Hancock did not commence suit during the two-year contestability period.

59. As a result of the fraudulent scheme carried out by Defendants (except Betty Klein), John Hancock issued the Policies and has suffered injury, in an amount to be proven at trial, arising from, without limitation: (i) the commissions and bonuses paid on the Policies; (ii) the costs of administering the Policies; (iii) the costs of investigating the issuance of the Policies; and (iv) the risk of being required to pay benefits on the fraudulently procured Policies.

60. Accordingly, John Hancock is entitled to judgment that: (i) the Policies were fraudulently obtained and are therefore void and unenforceable; (ii) the Policies were validly contested by John Hancock; and (iii) Defendants (except Betty Klein) defrauded it in obtaining issuance of the Policies and are therefore liable for John Hancock's injuries.

61. John Hancock is further entitled to recover actual and punitive damages in light of Defendants' conduct, committed with malice and deliberate fraud.

WHEREFORE, John Hancock seeks a judgment that the Policies are terminated and unenforceable, punitive and compensatory damages against Defendants in an amount to be determined at trial, and such other relief as this Court deems just and proper.

Dated: May 16, 2011
      New York, NY

                                       Respectfully submitted,

                                       BOIES, SCHILLER & FLEXNER LLP

                                       /s/ Alan Vickery

                                       Alan B. Vickery
                                       Boies, Schiller & Flexner LLP
                                       575 Lexington Avenue
                                       New York, NY 10022
                                       Phone: (212) 446-2345
                                       Fax:    (212) 446-2350
                                       Email: avickery@bsfllp.com

                                       Motty Shulman
                                       Boies, Schiller & Flexner LLP
                                       333 Main Street
                                       Armonk, NY 10504
                                       Phone: (914) 749-8200
                                       Fax:    (914) 749-8300
                                       Email: mshulman@bsfllp.com

                                       *Attorneys for Plaintiff The John Hancock Life Insurance Company (U.S.A.)*